No. 20-35827

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

DANIEL MITCHELL, et al.,

Plaintiffs-Appellants,

v.

CHUCK ATKINS, in his official capacity as
Sheriff of Clark County, Washington, et al.,

Defendants-Appellees,

and

SAFE SCHOOLS SAFE COMMUNITIES,

Defendant-Intervenor-Appellee.

_____

On Appeal from the United States District Court
for the Western District of Washington

No. 3:19-cv-05106-JCC
The Honorable John C. Coughenour

## BRIEF OF AMICI CURIAE ILLINOIS, CALIFORNIA, CONNECTICUT, DELAWARE, DISTRICT OF COLUMBIA, HAWAII, MAINE, MARYLAND, MASSACHUSETTS, MICHIGAN, MINNESOTA, NEW JERSEY, NEW MEXICO, NEW YORK, OREGON, PENNSYLVANIA, RHODE ISLAND, VERMONT, AND VIRGINIA IN SUPPORT OF DEFENDANTS-APPELLEES AND AFFIRMANCE

ALEX HEMMER
SARAH A. HUNGER
Deputy Solicitors General
100 West Randolph Street
Chicago, Illinois 60601
(312) 725-3834
ahemmer@atg.state.il.us

KWAME RAOUL
Attorney General
State of Illinois

JANE ELINOR NOTZ
Solicitor General

Attorneys for Amici States

*(Additional counsel on signature page)*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................... ii

IDENTITY AND INTEREST OF AMICI STATES.................................... 1

SUMMARY OF ARGUMENT ...................................................... 2

ARGUMENT ........................................................................ 6

I.  The Second Amendment And The Dormant Commerce Clause
    Afford States Latitude In Enacting Measures To Protect Public
    Health And Safety.................................................................. 6

II. The Age Provision, Which Protects Public Health And Safety,
    Is Consistent With Measures Taken By Other States And Upheld
    By Courts Across The Country. ...................................... 13

III. The Nonresident Sales Provision Serves Important State
    Interests In Public Safety And The Reduction of Gun Violence,
    And Is Consistent With Measures Taken By Other States. ........... 20

CONCLUSION ............................................................... 27

CERTIFICATE OF COMPLIANCE

i

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Colon Health Centers of America, LLC v. Hazel*,
　　813 F.3d 145 (4th Cir. 2016) ............................................................. 11

*Culp v. Raoul*,
　　921 F.3d 646 (7th Cir. 2019) ............................................................. 26

*District of Columbia v. Heller*,
　　554 U.S. 570 (2008) ........................................................................... 7

*Drake v. Filko*,
　　724 F.3d 426 (3d Cir. 2013) ............................................................. 22

*Friedman v. City of Highland Park*,
　　784 F.3d 406 (7th Cir. 2015) ......................................................... 8, 9

*Fyock v. City of Sunnyvale*,
　　779 F.3d 991 (9th Cir. 2015) ............................................................. 1

*Kachalsky v. County of Westchester*,
　　701 F.3d 81 (2d Cir. 2012) ............................................................... 22

*Kolbe v. Hogan*,
　　849 F.3d 114 (4th Cir. 2017) (en banc) ............................................. 9

*Horsley v. Trame*,
　　808 F.3d 1126 (7th Cir. 2015) ..................................................... 18, 19

*In re Jordan G.*,
　　33 N.E.3d 162 (Ill. 2015) ................................................................. 18

*Maine v. Taylor*,
　　477 U.S. 131 (1986) .................................................................... 10, 20

*Mance v. Sessions,*
    896 F.3d 699 (5th Cir. 2018)............................................................ 26

*McDonald v. City of Chicago,*
    561 U.S. 742 (2010)................................................................... 7, 8

*Medtronic, Inc. v. Lohr,*
    518 U.S. 470 (1996)........................................................................ 6

*National Rifle Association v. Bureau of Alcohol, Tobacco,*
    *Firearms & Explosives,* 700 F.3d 185 (5th Cir. 2012).............. 13, 19

*National Rifle Association v. McCraw,*
    719 F.3d 338 (5th Cir. 2013)........................................................ 19

*Oregon Waste Systems, Inc. v. Department of Environmental*
    *Quality of Oregon,* 511 U.S. 93 (1994) ...................................... 10

*Pena v. Lindley,*
    898 F.3d 969 (9th Cir. 2018)........................................................ 9

*Peruta v. Cnty. of San Diego,*
    824 F.3d 919 (9th Cir. 2016) (en banc) ...................................... 8, 9

*Pike v. Bruce Church, Inc.,*
    397 U.S. 137 (1970)...................................................................... 20

*Powell v. Tompkins,*
    926 F. Supp. 2d 367 (D. Mass. 2013).......................................... 19

*Sherlock v. Alling,*
    93 U.S. 99 (1876)........................................................................ 11

*United States v. Lopez,*
    514 U.S. 549 (1995)...................................................................... 6

*United States v. Morrison,*
    529 U.S. 598 (2000)...................................................................... 6

iii

*West Lynn Creamery, Inc. v. Healy*,
  512 U.S. 186 (1994)........................................................................... 10

*Yakima Valley Memorial Hospital v. Washington State*
  *Department of Health*, 731 F.3d 843 (9th Cir. 2013)....................... 11

## STATUTES

18 U.S.C. § 922 ..................................................................................... 15, 23

Ala. Code § 13A-11-57 ................................................................................ 16

Alaska Stat. § 11.61.210.............................................................................. 16

Ariz. Rev. Stat. § 13-3109 ........................................................................... 16

Ark. Code Ann. § 5-73-109 .......................................................................... 16

Cal. Penal Code
  § 26150...................................................................................................... 25
  § 26155...................................................................................................... 25
  § 27505...................................................................................................... 15
  § 27510...................................................................................................... 14

Conn. Gen. Stat.
  § 29-28 ...................................................................................................... 17
  § 29-34 ................................................................................................. 15, 16
  § 29-37a .................................................................................................... 16

D.C. Code Ann.
  § 7-2502.03 ............................................................................................... 17
  § 7-2507.06 ............................................................................................... 16
  § 22-4507 .................................................................................................. 15

Del. Code Ann.
    tit. 11, § 1441 ................................................................................ 25
    tit. 11, § 1445 ................................................................................ 16
    tit. 24, § 903 .......................................................................... 15, 16

Fla. Stat. § 790.065 ........................................................... 14, 15, 16

Haw. Rev. Stat. Ann.
    § 134-2 ............................................................................... 14, 17
    § 134-4 ..................................................................................... 17
    § 134-5 ..................................................................................... 17

Idaho Code Ann. § 18-3302 ..................................................... 16

430 Ill. Comp. Stat.
    65/2 ................................................................................... 17, 25
    65/3 ................................................................................... 14, 15
    65/4 ............................................................... 14, 15, 17, 25
    66/25 ......................................................................................... 25

Ind. Code Ann. § 35-47-2-3 ........................................................ 16

Iowa Code § 724.22 .................................................... 15, 16, 17

Ky. Rev. Stat. Ann. § 527.110 ................................................ 16

La. Rev. Stat. Ann. § 14:91 .................................................... 16

Mass. Gen. Laws
    ch. 140, § 130 ................................................................. 15, 16
    ch. 140, § 131E .............................................................. 15, 16

Md. Code Ann., Pub. Safety
    § 5-101 ........................................................................... 17, 18
    § 5-133 ........................................................................... 17, 18
    § 5-134 ........................................................................... 15, 16

Me. Rev. Stat. Ann.
    tit. 17-A, § 554-A .................................................................. 16
    tit. 17-A, § 554-B .................................................................. 17

Mich. Comp. Laws
    § 28.422 ................................................................................ 15
    § 750.223 .............................................................................. 16

Minn. Stat. § 609.66 ................................................................... 16

Miss. Code Ann. § 97-37-13 ................................................... 16, 17

Mo. Rev. Stat.
    § 571.060 .............................................................................. 16
    § 571.080 .............................................................................. 17

Mont. Code Ann. § 45-8-321 ..................................................... 25

N.C. Gen. Stat. § 14-315 ............................................................ 17

Neb. Rev. Stat.
    § 28-1204.01 ....................................................................... 16
    § 69-2403 ............................................................................. 15
    § 69-2404 ............................................................................. 15
    § 69-2433 ............................................................................. 25

N.H. Rev. Stat. Ann. § 159:12 ................................................... 17

N.J. Stat. Ann.
    § 2C:39-10 ........................................................................... 16
    § 2C:58-3 ............................................................................. 16
    § 2C:58-3.3 .......................................................................... 15
    § 2C:58-6.1 ..................................................................... 16, 17

N.M. Stat. Ann. § 29-19-4 ......................................................... 25

N.Y. Penal Law § 400.00 ......................................... 15, 16, 17, 25

Ohio Rev. Code Ann.
    § 2923.21...................................................................................... 15, 16
    § 2923.125.......................................................................................... 25

Okla. Stat. Ann. tit. 21, § 1273 ............................................................ 16, 17

Or. Rev. Stat.
    § 166.291.............................................................................................. 25
    § 166.470........................................................................................ 16, 17

18 Pa. Cons. Stat. Ann.
    § 6110.1.......................................................................................... 16, 17
    § 6302............................................................................................ 16, 17

R.I. Gen. Laws
    § 11-47-30 .......................................................................................... 16
    § 11-47-31 .......................................................................................... 16
    § 11-47-35 .......................................................................................... 15
    § 11-47-37 .......................................................................................... 15

S.C. Code Ann.
    § 16-23-30 .......................................................................................... 17
    § 23-31-210 ........................................................................................ 25
    § 23-31-215 ........................................................................................ 25

Tenn. Code Ann.
    § 39-17-1303 ................................................................................ 16, 17
    § 39-17-1320 ...................................................................................... 17

Tex. Penal Code Ann. § 46.06 .............................................................. 16, 17

Va. Code Ann. § 18.2-309 ......................................................................... 17

Vt. Stat. Ann. tit. 13, § 4020 ..................................................... 14, 15, 16, 17

Wash. Rev. Code
§ 9.41.090 .......................................................................... 3
§ 9.41.124 .......................................................................... 3
§ 9.41.240 ........................................................ 3, 15, 17, 18

Wis. Stat. § 948.60 ................................................................ 16, 17

Wyo. Stat. § 6-8-404 ............................................................. 15, 16

## OTHER AUTHORITIES

Federal Bureau of Investigation, *Uniform Crime Reporting Statistics: Their Proper Use* (May 2017),
https://ucr.fbi.gov/ucr-statistics-their-proper-use ........................... 12

Federal Bureau of Investigation, *Murder: Crime in the United States 2018*, https://ucr.fbi.gov/crime-in-the-u.s/2018/crime-in-the-u.s.-2018/tables/table-20 ......................................................... 12

Giffords Law Center, *Minimum Age to Purchase and Possess*,
https://giffords.org/lawcenter/gun-laws/policy-areas/
who-can-have-a-gun/minimum-age/ ......................................... 14, 18

Giffords Law Center, *Universal Background Checks*,
https://giffords.org/lawcenter/gun-laws/policy-areas/background-checks/universal-background-checks/ ............................................. 23

H.R. Rep. No. 90-1577 (1968) ...................................................... 24

Lee, Lois K., et al., *Firearm Laws and Firearm Homicides: A Systematic Review*, 177 JAMA Internal Med. 106 (2017) ............... 22

S. Rep. No. 89-1866 (1966) .......................................................... 24

S. Rep. No. 90-1097 (1968) .......................................................... 24

Swanson, Jeffrey W., et al., *Preventing Gun Violence Involving People with Serious Mental Illness*, in *Reducing Gun Violence in America: Informing Policy with Evidence and Analysis* 33 (Daniel W. Webster & Jon S. Vernick eds., 2013) .......................... 22

Webster, Daniel W., et al., *Effects of State-Level Firearm Seller Accountability Policies on Firearm Trafficking*, 86 J. Urban Health 525 (2009) .......................................................................... 23

Wintemute, Garen J., *Broadening Denial Criteria for the Purchase and Possession of Firearms: Need, Feasibility, and Effectiveness*, in *Reducing Gun Violence in America: Informing Policy with Evidence and Analysis* 77 (Daniel W. Webster & Jon S. Vernick eds., 2013)........................................................................... 22

Zeoli, April M. & Shannon Frattaroli, *Evidence for Optimism: Policies to Limit Batterers' Access to Guns*, in *Reducing Gun Violence in America: Informing Policy with Evidence and Analysis* 53 (Daniel W. Webster & Jon S. Vernick eds., 2013) .......................... 22

## IDENTITY AND INTEREST OF AMICI STATES

The amici States of Illinois, California, Connecticut, Delaware, the District of Columbia, Hawaii, Maine, Maryland, Massachusetts, Michigan, Minnesota, New Jersey, New Mexico, New York, Oregon, Pennsylvania, Rhode Island, Vermont, and Virginia submit this brief in support of Defendants-Appellees Chuck Atkins, Sheriff of Clark County, Washington; Craig Meidl, Chief of Police of Spokane, Washington; and Teresa Berntsen, Director of the Washington State Department of Licensing ("Washington"); and Defendant-Intervenor-Appellee Safe Schools Safe Communities, pursuant to Federal Rule of Appellate Procedure 29(a)(2). The amici States have a substantial interest in the public health, safety, and welfare of their communities, which includes protecting their residents from the harmful effects of gun violence and promoting the safe use of firearms. *See Fyock v. City of Sunnyvale*, 779 F.3d 991, 1000 (9th Cir. 2015) ("self-evident" that "promoting public safety and reducing violent crime are substantial and important government interests").

To serve that compelling interest, States have long exercised their governmental prerogative to implement measures that seek to ensure

1

that, within their borders, only those individuals who are likely to use firearms responsibly are able to access them. These include regulations that, like those challenged here, prohibit young people from purchasing firearms and ensure that those who are allowed to purchase firearms undergo a thorough background check before doing so.

Although the amici States have reached different conclusions on how best to regulate in these areas, they share an interest in protecting their right to address the problem of gun violence in a way that is tailored to the specific circumstances in each of their States. Enjoining Washington's sensible regulation of the sale of semiautomatic assault rifles would interfere with this interest. Accordingly, amici States urge this Court to affirm the district court's decision granting summary judgment to defendants and confirming the constitutionality of Washington's law.

## SUMMARY OF ARGUMENT

In 2018, the people of Washington passed Initiative Measure No. 1639 ("I-1639"), which imposed new rules on the sale of semiautomatic assault rifles within the State, three of which are relevant here. First, the initiative imposed an age requirement on the sale of semiautomatic

assault rifles, barring persons under the age of 21 from purchasing them (the "Age Provision")—a requirement federal law already imposes on the purchase of handguns. *See* Wash. Rev. Code § 9.41.240(1). Second, the initiative required local law enforcement agencies to conduct enhanced background checks on prospective purchasers of semiautomatic assault rifles (the "Background Check Provision")—the same checks that Washington already required such agencies to conduct on prospective purchasers of pistols. *Id.* § 9.41.090(2)(b). Finally, the initiative barred nonresidents from purchasing semiautomatic assault rifles in person within the State (the "Nonresident Sales Provision"), again reproducing a requirement already imposed on the sale of handguns. *Id.* § 9.41.124. These provisions were enacted to promote public safety and reduce gun violence within the State by ensuring that purchasers of semiautomatic assault rifles—the weapons responsible for a large portion of the mass shootings that have occurred over the last decade, Wash. Br. 3-4—are subject to the same standards as purchasers of handguns.

Plaintiffs challenge the Age Provision on the ground that it violates the Second Amendment and the Nonresident Sales Provision on the ground that it violates the dormant Commerce Clause. But the district

3

court correctly rejected both challenges. As the district court held, the Age Provision regulates conduct outside the scope of the Second Amendment because laws regulating the sale of firearms to young adults are longstanding and presumptively lawful, and, in any event, if the Amendment applies, the Age Provision does not violate it, because it is reasonably related to Washington's substantial interest in public safety. ER 12-21. And, as the court also held, the Nonresident Sales Provision does not violate the dormant Commerce Clause because, among other reasons, it does not favor in-state economic interests at the expense of out-of-state interests. ER 21-25.

Amici States agree with both bases for the district court's decision, and write to further explain the States' longstanding and weighty interests in regulating in these areas. As explained below, the Second Amendment reserves to the States the ability to exercise their police powers by enacting sensible and varied regulations designed to protect the public. In fact, all States and the District of Columbia have imposed age-based regulations on the sale and use of firearms within their borders. Although these regulations differ based on each jurisdiction's needs, at least 17 States and the District of Columbia have enacted a

minimum age requirement of 21 for the sale or possession of certain kinds of firearms. Washington's regulation of the sale of semiautomatic assault rifles to young adults falls comfortably within this tradition.

In addition, Washington's decision to restrict the in-person sale of semiautomatic assault rifles to its own residents does not offend the dormant Commerce Clause. The measure does not discriminate against out-of-state economic interests, and it serves the substantial goal of protecting public safety. Washington has elected to conduct more rigorous background checks on prospective purchasers of semiautomatic assault rifles. But it cannot effectively perform those checks on nonresidents, because the state and local databases on which it relies contain information about Washington residents only. Accordingly, Washington has restricted the sale of these firearms to those whose qualifications it can verify. That decision, too, is consistent with choices made by other States. Although the precise form of the regulations differ from jurisdiction to jurisdiction, many States have likewise decided to restrict the access to and use of firearms within state boundaries to their own residents for public safety reasons. Washington's regulation of the

sale of semiautomatic assault rifles to its own residents is thus well-supported and constitutional.

## ARGUMENT

### I. The Second Amendment And The Dormant Commerce Clause Afford States Latitude In Enacting Measures To Protect Public Health And Safety

The amici States have long exercised their police power to protect the health, safety, and welfare of their residents. In fact, "the States possess primary authority for defining and enforcing the criminal law," *United States v. Lopez*, 514 U.S. 549, 561 n.3 (1995) (internal quotations omitted), and have "great latitude under their police powers to legislate as to the protection of the lives, limbs, health, comfort, and quiet of all persons," *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996) (internal quotations omitted). These responsibilities include enacting measures to promote safety, prevent crime, and minimize gun violence within their borders. *See, e.g.*, *United States v. Morrison*, 529 U.S. 598, 618 (2000) ("Indeed, we can think of no better example of the police power, which the Founders denied the National Government and reposed in the States, than the suppression of violent crime and vindication of its victims.").

In the amici States' experience, such measures are more effective when tailored to the individual needs of each State. The determination made by Washington here—that regulating access to semiautomatic assault rifles is necessary to promote public safety and prevent crime within its borders—fits comfortably within the States' longstanding police power and does not transgress either the Second Amendment or the dormant Commerce Clause.

Courts in both contexts have emphasized States' authority to protect the public health and safety of their citizens. In the Second Amendment context, the Supreme Court made clear in *District of Columbia v. Heller*, 554 U.S. 570 (2008), that the right to keep and bear arms is "not unlimited*." Id*. at 595; *see also McDonald v. City of Chicago*, 561 U.S. 742, 802 (2010) ("No fundamental right—not even the First Amendment—is absolute."). Although government entities may not ban handgun possession by responsible, law-abiding individuals in the home, the Court explained, States still possess "a variety of tools" to combat the problem of gun violence via regulation. *Heller*, 554 U.S. at 636. The States may, for example, implement measures prohibiting certain groups of individuals from possessing firearms, such as "felons

and the mentally ill," or "imposing conditions and qualifications on the commercial sale of arms." *Id.* at 626-27; *see also Peruta v. Cnty. of San Diego*, 824 F.3d 919, 928 (9th Cir. 2016) (en banc) (noting that the *Heller* Court "emphasized the limited scope of its holding, and underscored the tools that remained available to the District of Columbia to regulate firearms").

In *McDonald*, the Court elaborated on this principle: It recognized "that conditions and problems differ from locality to locality," 561 U.S. at 783, and held that the Second Amendment "by no means eliminates" the States' "ability to devise solutions to social problems that suit local needs and values," *id.* at 785; *see also Friedman v. City of Highland Park*, 784 F.3d 406, 412 (7th Cir. 2015) ("[T]he Constitution establishes a federal republic where local differences are cherished as elements of liberty, rather than eliminated in a search for national uniformity."). Consistent with that holding, lower courts have recognized in a range of cases that States must be able to tailor regulations to local needs and circumstances when assessing challenges to firearm restrictions. This Court, for instance, upheld California's "decision to require new semiautomatic gun models manufactured in-state to incorporate new

technology," because "the state must be allowed a reasonable opportunity to experiment with solutions to admittedly serious problems." *Pena v. Lindley*, 898 F.3d 969, 980 (9th Cir. 2018) (quotation marks omitted); *see also Peruta*, 824 F.3d at 945 (Graber, J., concurring) (same reasoning with respect to California's regulation of concealed-carry permits).

Other courts have upheld firearm regulations on substantially similar grounds. In *Friedman*, for instance, the Seventh Circuit upheld a city's ban on assault weapons and large-capacity magazines, noting that although "*Heller* and *McDonald* set limits on the regulation of firearms," they did not "take all questions about which weapons are appropriate for self-defense out of the people's hands." 784 F.3d at 412. And in *Kolbe v. Hogan*, 849 F.3d 114 (4th Cir. 2017) (en banc), in which the Fourth Circuit rejected a challenge to Maryland's ban on assault weapons and large-capacity magazines, Judge Wilkinson wrote separately to highlight the need for courts to defer to legislative judgments. *Id*. at 151 (Wilkinson, J., concurring). Courts should not, he argued, draw from "the profound ambiguities of the Second Amendment an invitation . . . to preempt this most volatile of political subjects and arrogate to

9

themselves decisions that have been historically assigned to other, more democratic, actors." *Id.* at 150.

The Supreme Court and lower courts have recognized much the same in the context of the dormant Commerce Clause. Although States may not "unjustifiably . . . discriminate against or burden the interstate flow of articles of commerce," *Oregon Waste Sys., Inc. v. Dep't of Envtl. Quality of Oregon*, 511 U.S. 93, 98 (1994), that limitation is "by no means absolute," *Maine v. Taylor*, 477 U.S. 131, 138 (1986). On the contrary, "the States retain authority under their general police powers to regulate matters of legitimate local concern, even though interstate commerce may be affected." *Id.* (quotation marks omitted). Therefore, as "long as a State does not needlessly obstruct interstate trade . . . , it retains broad regulatory authority under the commerce clause to protect the health and safety of its citizens." *Id.* at 151; *see also West Lynn Creamery, Inc. v. Healy*, 512 U.S. 186, 206 n.21 (1994) (noting the "deeply rooted" distinction between the State's "power . . . to shelter its people from menaces to their health or safety . . . , even when those dangers emanate from interstate commerce, and its lack of power to . . . constrict the flow of such commerce for their economic advantage").

10

Applying these principles, circuit courts, including this one, have often turned back dormant Commerce Clause challenges to nondiscriminatory measures enacted pursuant to States' police powers. In *Yakima Valley Memorial Hospital v. Washington State Department of Health*, 731 F.3d 843 (9th Cir. 2013), for instance, this Court rejected a challenge to a state law that regulated the provision of certain elective medical procedures. Because the challenged law did not discriminate against out-of-state economic interests, the Court explained, it was "loath" to question the State's judgment that the law served public safety: "[I]f safety justifications are not illusory, the Court will not second-guess legislative judgment about their importance in comparison with related burdens on interstate commerce." *Id.* at 850. The Fourth Circuit has likewise emphasized the importance of deferring to legislative judgment when evaluating laws enacted pursuant to the police power, explaining that "[c]ourts enforcing the dormant Commerce Clause were 'never intended to cut the States off from legislating on . . . subjects relating to the health, life, and safety of their citizens.'" *Colon Health Centers of Am., LLC v. Hazel*, 813 F.3d 145, 158 (4th Cir. 2016) (quoting *Sherlock v. Alling*, 93 U.S. 99, 103 (1876)).

11

In both doctrinal contexts, then, States retain substantial authority to enact public-safety measures tailored to local needs. That authority is particularly critical in the context of firearm regulations, where needs differ dramatically from State to State. As the Federal Bureau of Investigation has explained, a wide variety of factors "affect the volume and type of crime occurring from place to place," including population density, poverty level, job availability, transportation infrastructure, criminal justice system policies, and educational and recreational characteristics.[1] These factors, which vary from State to State, produce disparities in the number and characteristics of firearm-related murders and other crimes.[2] Given these unique conditions and needs, States must be able to implement varied measures to address gun violence and protect the health and safety of their residents.

This Court should apply these principles—which build on the States' responsibility to protect the health and safety of their residents

---

[1] FBI, *Uniform Crime Reporting Statistics: Their Proper Use* (May 2017), https://ucr.fbi.gov/ucr-statistics-their-proper-use. All websites were last visited on March 4, 2021.

[2] *See, e.g.*, FBI, *Murder: Crime in the United States 2018, tbl. 20*, https://ucr.fbi.gov/crime-in-the-u.s/2018/crime-in-the-u.s.-2018/tables/table-20.

and their ability to utilize innovative measures when doing so—to the firearm restrictions at issue in this case.

## II. The Age Provision, Which Protects Public Health And Safety, Is Consistent With Measures Taken By Other States And Upheld By Courts Across The Country.

Washington's regulation of the sale of semiautomatic assault rifles to young adults fits comfortably within the parameters outlined above. As Washington explains, the Age Provision was enacted in order to promote public safety and reduce gun violence, including in the context of mass shootings, by restricting access to dangerous firearms among young adults, who "tend to be more impulsive" and likelier to resort to violent crime than older adults. *Nat'l Rifle Ass'n v. ATF*, 700 F.3d 185, 210 n.21 (5th Cir. 2012); *see* Wash. Br. 35-38.

The means chosen by Washington to achieve its public safety goals are consistent with those implemented across the country and upheld by the courts. Although States have reached different conclusions on how best to regulate the sale and use of, and access to, firearms—as they are permitted to do, *see supra* Section I.A—all 50 States and the District of Columbia have determined that imposing age-based restrictions on the

sale or use of firearms is necessary to promote public safety and curb gun violence within their borders.[3]

More specifically, many States have imposed very similar age-based restrictions to the one at issue here. Seventeen States and the District of Columbia regulate the sale of firearms to those under 21. Of those, California, Florida, Hawaii, Illinois, and Vermont generally prohibit the retail sale of long guns, with certain exceptions, to minors and young adults aged 18 to 20.[4] Many of these laws were enacted in the wake of high-profile shootings committed by young adults. Florida, for instance, overhauled its firearm laws in 2018 after a 19-year-old used a semiautomatic assault rifle to kill 17 people at a high school in Parkland, Florida. *See* Laws of Fla., ch. 2018-3, § 2 (finding "a need to comprehensively address the crisis of gun violence"). The new law categorically prohibits persons under the age of 21 from purchasing firearms. *See* Fla. Stat. § 790.065(13). Despite plaintiffs' depiction of the

---

[3] Giffords Law Center, *Minimum Age to Purchase and Possess*, https://giffords.org/lawcenter/gun-laws/policy-areas/who-can-have-a-gun/minimum-age/ (collecting state laws that impose a minimum age for purchasing and/or possessing handguns and/or long guns).

[4] Cal. Penal Code § 27510; Fla. Stat. § 790.065(13); Haw. Rev. Stat. Ann. § 134-2(a), (d); 430 Ill. Comp. Stat. 65/3(a), 65/4; 13 Vt. Stat. Ann. § 4020.

Age Provision as "the most restrictive rifle ban ever imposed in the nation," Pls.' Br. 26, then, Washington's decision to impose an age restriction on the sale of semiautomatic assault rifles (the same age restriction that federal law imposes on the sale of handguns by licensed dealers, *see* 18 U.S.C. § 922(b)(1), (c)(1)) is nothing out of the ordinary.

Setting a minimum age of 21 is also common in the related context of handgun sales; indeed, 17 States—California, Connecticut, Delaware, Florida, Illinois, Iowa, Maryland, Massachusetts, Michigan, Nebraska, New Jersey, New York, Ohio, Rhode Island, Vermont, Washington, and Wyoming—and the District of Columbia all prohibit the sale of handguns to persons under 21.[5] Some of these statutes contain exceptions to the

---

[5] Cal. Penal Code § 27505(a); Conn. Gen. Stat. § 29-34(b); D.C. Code Ann. § 22-4507; Del. Code Ann. tit. 24, § 903; Fla. Stat. § 790.065(13); 430 Ill. Comp. Stat. 65/3(a), 65/4; Iowa Code § 724.22(2); Mass. Gen. Laws ch. 140, §§ 130, 131E(b); Md. Code Ann., Pub. Safety § 5-134(b); Mich. Comp. Laws § 28.422(3)(b), (12); Neb. Rev. Stat. §§ 69-2403, 69-2404; N.J. Stat. Ann. §§ 2C:58-3.3(c), 3(c)(4), 6.1(a); N.Y. Penal Law § 400.00(1)(a), (12); Ohio Rev. Code Ann. § 2923.21(B); R.I. Gen. Laws §§ 11-47-35(a)(1), 11-47-37; Vt. Stat. Ann. tit. 13, § 4020; Wash. Rev. Code Ann. § 9.41.240; Wyo. Stat. § 6-8-404(d)(i)(A).

age restrictions—such as for law enforcement or correctional officers and servicemembers—whereas others contain none.[6]

Other States have determined that a minimum age requirement of 18 best suits their needs. For instance, 27 States and the District of Columbia prohibit the sale of long guns to individuals under 18, subject to exceptions in certain jurisdictions.[7] Similarly, 21 States have imposed varied restrictions on the sale of handguns to those under 18.[8]

---

[6] *Compare, e.g.*, Iowa Code § 724.22(2); N.Y. Penal Law § 400.00(1)(a); Ohio Rev. Code Ann. § 2923.21(B); Vt. Stat. Ann. tit. 13, § 4020, *with* Conn. Gen. Stat. § 29-34(b); Del. Code Ann. tit. 24, § 903; Fla. Stat. § 790.065(13); Wyo. Stat. § 6-8-404(d)(i)(A).

[7] Alaska Stat. § 11.61.210(a)(6); Ariz. Rev. Stat. § 13-3109(A); Ark. Code Ann. § 5-73-109(a); Conn. Gen. Stat. § 29-37a(b), (c); D.C. Code. Ann. § 7-2507.06(a)(1); Del. Code Ann. tit. 11, § 1445; Idaho Code Ann. § 18-3302A; Iowa Code § 724.22(1); La. Rev. Stat. Ann. § 14:91; Mass. Gen. Laws ch. 140, §§ 130, 131E(a); Me. Rev. Stat. Ann. 17-A, § 554-A; Md. Code Ann., Pub. Safety § 5-134(d)(1)(ii); Mich. Comp. Laws § 750.223(2); Minn. Stat. § 609.66; Miss. Code Ann. § 97-37-13; Mo. Rev. Stat. § 571.060.1(2) (applies to reckless sales to a minor); Neb. Rev. Stat. § 28-1204.01; N.J. Stat. Ann. §§ 2C:39-10(e), 2C:58-3(c)(4), 2C:58-6.1(a); Ohio Rev. Code Ann. § 2923.21(A); Okla. Stat. Ann. tit. 21, § 1273(A), (E); Or. Rev. Stat. § 166.470(1)(a); 18 Pa. Cons. Stat. Ann. §§ 6110.1(c), (d), 6302; R.I. Gen. Laws §§ 11-47-30, 11-47-31; Tenn. Code Ann. § 39-17-1303(a)(1); Tex. Penal Code Ann. § 46.06(a)(2), (c); Vt. Stat. Ann. tit. 13, § 4020; Wis. Stat. § 948.60(2)(b); Wyo. Stat. § 6-8-404(d)(i)(B).

[8] Ala. Code § 13A-11-57; Alaska Stat. § 11.61.210(a)(6); Ariz. Rev. Stat. § 13-3109(A); Ark. Code Ann. § 5-73-109(a); Ind. Code Ann. § 35-47-2-3; Ky. Rev. Stat. Ann. § 527.110(1)(a); La. Rev. Stat. Ann. § 14:91; Me. Rev.

Finally, many States have employed minimum age restrictions when regulating the possession of firearms. Nine States and the District of Columbia have set a minimum age of 21 to possess firearms, subject to certain exceptions. Specifically, Connecticut, the District of Columbia, Hawaii, Illinois, Iowa, Maryland, Massachusetts, New Jersey, New York, and Washington restrict possession of handguns for those under 21.[9] And Hawaii, Illinois, and the District of Columbia extend those age restrictions to the possession of long guns, subject to certain exceptions, whereas Maryland and Washington prohibit the possession of assault weapons and semiautomatic rifles, respectively, to those under 21.[10]

---

Stat. Ann. tit. 17-A, § 554-B; Miss. Code Ann. § 97-37-13; Mo. Rev. Stat. § 571.080; N.C. Gen. Stat. § 14-315; N.H. Rev. Stat. Ann. § 159:12; Okla. Stat. Ann. tit. 21, § 1273(A), (E); Or. Rev. Stat. § 166.470(1)(a); 18 Pa. Cons. Stat. Ann. §§ 6110.1(c), (d), 6302; S.C. Code Ann. § 16-23-30(A)(3); Tenn. Code Ann. §§ 39-17-1303(a)(1), 39-17-1320(a); Tex. Penal Code Ann. § 46.06(a)(2), (c); Vt. Stat. Ann. tit. 13, § 4020; Va. Code Ann. § 18.2-309; Wis. Stat. § 948.60(2)(b).

[9] Conn. Gen. Stat. § 29-28; D.C. Code Ann. § 7-2502.03(a)(1); Haw. Rev. Stat. Ann. §§ 134-2(a), 134-2(d), 134-4(b), 134-5(b); 430 Ill. Comp. Stat. 65/2(a)(1), 65/4(a)(2)(i); Iowa Code § 724.22; Md. Code Ann., Pub. Safety §§ 5-101(r), 5-133(d); Mass. Gen. Laws ch. 140, § 131(d)(iv); N.J. Stat. Ann. § 2C:58-6.1(b); N.Y. Penal Law § 400.00(1)(a); Wash. Rev. Code Ann. § 9.41.240.

[10] *Compare* D.C. Code Ann. § 7-2502.03; Haw. Rev. Stat. Ann. §§ 134-2(a), 134-2(d), 134-4, 134-5; 430 Ill. Comp. Stat. 65/2(a)(1), 65/4(a)(2)(i),

Numerous additional States, too, have imposed a minimum age of 18 on the possession of handguns or long guns, and select others have set 16, 17, or 19 as the minimum age.[11]

Notably, courts across the country have upheld these age-based restrictions on the sale and possession of firearms. *See* ER14-15 (decision below) (canvassing caselaw). As one example, federal and state courts have affirmed the constitutionality of an Illinois statutory scheme that requires parental consent for individuals under 21 to obtain a license to possess firearms. *See, e.g.*, *Horsley v. Trame*, 808 F.3d 1126, 1134 (7th Cir. 2015) (upholding parental consent requirement for young adults between the ages of 18 and 20); *In re Jordan G.*, 33 N.E.3d 162, 168-69 (Ill. 2015) (upholding portions of aggravated unlawful use of a weapon statute that apply to persons under the age of 21 without the requisite license). As the Seventh Circuit explained, Illinois acted consistently with the Second Amendment when it enacted these measures to promote its longstanding interest in public safety and, more

---

*with* Md. Code Ann., Pub. Safety §§ 5-101(r), 5-133(d); Wash. Rev. Code Ann. § 9.41.240.

[11] Giffords Law Center, *supra* note 3.

specifically, in protecting residents from firearms violence. *Horsley*, 808 F.3d at 1132.

The Fifth Circuit has similarly rejected a constitutional challenge to Texas statutes that prohibit persons aged 18 to 20 from carrying handguns in public. *Nat'l Rifle Ass'n v. McCraw*, 719 F.3d 338, 347 (5th Cir. 2013). In reaching this conclusion, the court relied on a decision upholding the federal ban on commercial handgun sales to individuals under 21, noting that the goal of both regulations was to restrict the use of and access to firearms by young adults to deter crime and promote public safety. *Id.* (citing *Nat'l Rifle Ass'n v. ATF*, 700 F.3d at 185); *see also Powell v. Tompkins*, 926 F. Supp. 2d 367, 385-393 (D. Mass. 2013) (rejecting Second Amendment challenge to Massachusetts minimum age requirement for public carriage), *aff'd* 783 F.3d 332 (1st Cir. 2015).

In short, Washington's decision to implement age-based restrictions on the sale of semiautomatic assault rifles does not make it an outlier, nor place it outside of the constitutional range. In implementing this policy, Washington has taken into account the specific needs of its residents without imposing any restrictions that are inconsistent with those in other jurisdictions.

19

### III. The Nonresident Sales Provision Serves Important State Interests In Public Safety And The Reduction of Gun Violence, And Is Consistent With Measures Taken By Other States.

Washington's decision to restrict the in-person sales of semiautomatic assault rifles to state residents is also a constitutional means of serving the State's goal of protecting the public from gun violence. As Washington explains, the Nonresident Sales Provision does not trigger heightened review under the dormant Commerce Clause because it does not benefit in-state economic interests at the expense of out-of-state interests. Wash. Br. 56-62. And because the provision is nondiscriminatory, it is constitutional unless the burdens it imposes are "clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). As explained, *see supra* pp. 10-11, the Supreme Court has emphasized that the Commerce Clause does not disrupt States' "broad regulatory authority to protect the health and safety of its citizens." *Taylor*, 477 U.S. at 151. Here, the local benefits served by the Nonresident Sales Provision are substantial, and amply outweigh any incidental burdens the provision imposes on interstate commerce.

Most obviously, restricting in-person sales of semiautomatic assault rifles to state residents allows the State to conduct more robust background checks on those who purchase those weapons within its borders. As Washington explains, Wash. Br. 7-8, for many years it has conducted enhanced background checks on prospective purchasers of pistols. *See* ER10. Those background checks are much more comprehensive than the checks conducted by the FBI: They query not only applicable federal databases, but also a wide range of Washington state and local databases, including those containing state court and mental health records. *Id.* Those state databases frequently yield information about prospective purchasers that should disqualify them from buying dangerous weapons—for instance, by supplying information about juvenile records, which are rarely maintained in federal databases. *See, e.g.*, D. Ct. Doc. 86 ¶¶ 6-7. But, as the district court reasoned, these checks "cannot be conducted on nonresidents because Washington State cannot request—much less require—out-of-state law enforcement agencies" to provide equivalent state and local records. ER25.

Washington's choice to require more rigorous background checks on the prospective purchasers of semiautomatic assault rifles—checks

that can only effectively be conducted on state residents—thus protects public safety within the State, a quintessential local benefit.  *Cf. Kachalsky v. Cty. of Westchester*, 701 F.3d 81, 94-95 (2d Cir. 2012) ("There is a longstanding tradition of states regulating firearm possession and use in public because of the dangers posed to public safety."); *see also Drake v. Filko*, 724 F.3d 426, 437 (3d Cir. 2013) (same). Social science research demonstrates that state laws prohibiting high-risk groups (for instance, perpetrators of domestic violence and the severely mentally ill) from possessing firearms reduce gun violence, but only if States are able to effectively enforce those laws by screening for such characteristics.[12]  Consistent with that finding, multiple studies have found that increasing the breadth and depth of background checks

---

[12]  *See, e.g.*, Garen J. Wintemute, *Broadening Denial Criteria for the Purchase and Possession of Firearms: Need, Feasibility, and Effectiveness*, in *Reducing Gun Violence in America: Informing Policy with Evidence and Analysis* 77, 88-90 (Daniel W. Webster & Jon S. Vernick eds., 2013); April M. Zeoli & Shannon Frattaroli, *Evidence for Optimism: Policies to Limit Batterers' Access to Guns*, in *Reducing Gun Violence*, *supra*, at 53, 60-61; Jeffrey W. Swanson et al., *Preventing Gun Violence Involving People with Serious Mental Illness*, in *Reducing Gun Violence*, *supra*, at 33, 48-49.

can reduce gun violence.[13]  States have thus enacted a wide range of measures expanding both the applicability of background checks (for instance, making them apply to private firearms transactions) and—as Washington has here—the number of databases on which background checks rely.[14]  Enhancing background checks—even if doing so requires restricting in-person sales to state residents only—thus furthers the important state interest of protecting public health and safety.

Washington's choice to restrict in-person sales of semiautomatic assault rifles to state residents is not only well supported, but, like the Age Provision, is consistent with choices made by other jurisdictions. Most notably, federal law has since 1968 prohibited licensed firearms dealers from selling handguns to purchasers who do not reside in the dealers' home state—the exact same regime Washington has extended here to the sale of semiautomatic assault rifles.  18 U.S.C. § 922(b)(3).  In

---

[13]  *See, e.g.*, Lois K. Lee et al., *Firearm Laws and Firearm Homicides: A Systematic Review*, 177 JAMA Internal Med. 106, 117 (2017); Daniel W. Webster et al., *Effects of State-Level Firearm Seller Accountability Policies on Firearm Trafficking*, 86 J. Urban Health 525, 533-535 (2009).

[14]  *See* Giffords Law Center, *Universal Background Checks*, https://giffords.org/lawcenter/gun-laws/policy-areas/background-checks/universal-background-checks/.

the 1960s, Congress conducted a multi-year investigation of violent crime that revealed a "serious problem of individuals going across State lines to procure firearms which they could not lawfully obtain or possess in their own State." S. Rep. No. 89-1866, at 19 (1966). That trend had caused "the laws of . . . States and their political subdivisions [to be] circumvented, contravened, and rendered ineffective." S. Rep. No. 90-1097, at 77 (1968). To address these concerns, Congress decided to limit the in-person sales of handguns to nonresidents, a measure that it believed would help "assist the States effectively to regulate firearms traffic within their borders." H.R. Rep. No. 90-1577, at 6 (1968). Washington has done the same here, taking steps to ensure that only persons whose backgrounds it can ascertain with certainty will be able to purchase semiautomatic assault rifles within its borders.

Other States have made similar decisions, restricting either the sale of firearms or their use to state residents. Illinois, for instance, allows the in-person retail sale of specified firearms only to those with certain permits, and has restricted the issuance of such permits to individuals who are either state residents or residents of States with

24

equally robust programs for performing background checks.[15]  Other States have made analogous decisions in the context of licenses to carry firearms.  Several States, for instance, have restricted the issuance of concealed-carry licenses to individuals either to state residents only or to residents of States with analogous regulatory regimes.[16]  These States have thus made judgments similar to Washington's, albeit in a different context:  They want to limit the use of firearms in public to those people that they (or, in some cases, their sister States) have confirmed do not pose a threat to public safety.

Courts have consistently upheld these regulations against other kinds of constitutional challenge as sufficiently tailored to the substantial interest in protecting public safety.  The Fifth Circuit, for instance, in 2018 upheld the constitutionality of the federal ban on in-person sales of handguns to nonresidents, explaining that it was narrowly tailored to the "compelling government interest in preventing

---

[15]  *See* 430 Ill. Comp. Stat. 65/2(a), 65/4(a)(2)(xiv).

[16]  *See* Cal. Penal Code §§ 26150(a)(3), 26155(a)(3); Del. Code Ann. tit. 11, § 1441(a); 430 Ill. Comp. Stat. 66/25(2); Mont. Code Ann. § 45-8-321(1); Neb. Rev. Stat. § 69-2433(7); N.M. Stat. Ann. § 29-19-4(A)(2); N.Y. Penal Law § 400.00(3)(a); Ohio Rev. Code Ann. § 2923.125(B)(7); Or. Rev. Stat. § 166.291(1)(c); S.C. Code Ann. §§ 23-31-215(A)(3), 23-31-210(1), (2).

circumvention of [State] handgun laws." *Mance v. Sessions*, 896 F.3d 699, 707 (5th Cir. 2018), *cert. denied*, 141 S. Ct. 123 (2020). And the Seventh Circuit has likewise upheld the constitutionality of Illinois's concealed carry licensure scheme, under which nonresidents may not obtain concealed carry licenses unless their States have established regulatory regimes for firearm ownership and possession that, like Illinois's, include a robust background check. *See Culp v. Raoul*, 921 F.3d 646, 658 (7th Cir. 2019), *cert. denied*, 141 S. Ct. 109 (2020). As the Seventh Circuit explained, the States have a "weighty interest in preventing the public carrying of firearms by individuals with mental illness and felony criminal records," and, because they cannot as effectively "monitor the . . . qualifications of out-of-state residents," they may permissibly limit licensure to those whose qualifications they can verify. *Id.* at 655. Although Washington has imposed its restriction at the purchase stage rather than the licensure stage, its effect is the same: to protect public safety by limiting access to dangerous firearms to those people the State can ensure are entitled to possess them.

In short, Washington's decision to impose residency restrictions on the sale of semiautomatic assault rifles is well-supported and consistent

with decisions made by other States.  Whatever incidental burdens the Nonresident Sales Provision places on interstate commerce are easily outweighed by the State's interests in protecting public safety and reducing gun violence.

## CONCLUSION

For these reasons, this Court should affirm the judgment below.

Respectfully submitted,

KWAME RAOUL
Attorney General
State of Illinois

JANE ELINOR NOTZ
Solicitor General

/s/ Alex Hemmer
ALEX HEMMER
SARAH A. HUNGER
Deputy Solicitors General
100 West Randolph Street
Chicago, Illinois 60601
(312) 725-3834
ahemmer@atg.state.il.us

XAVIER BECERRA
*Attorney General*
*State of California*
300 South Spring St., Suite 1702
Los Angeles, CA 90013

WILLIAM TONG
*Attorney General*
*State of Connecticut*
165 Capitol Avenue
Hartford, CT 06106

27

KATHLEEN JENNINGS
*Attorney General*
*State of Delaware*
820 N. French Street
Wilmington, DE 19801

KARL A. RACINE
*Attorney General*
*District of Columbia*
400 6th Street NW, Suite 8100
Washington, DC 20001

CLAIRE E. CONNORS
*Attorney General*
*State of Hawaii*
425 Queen Street
Honolulu, HI 96813

AARON M. FREY
*Attorney General*
*State of Maine*
6 State House Station
Augusta, ME 04333

BRIAN E. FROSH
*Attorney General*
*State of Maryland*
200 Saint Paul Place
Baltimore, MD 21202

MAURA HEALEY
*Attorney General*
*Commonwealth of Massachusetts*
One Ashburton Place
Boston, MA 02108

DANA NESSEL
*Attorney General*
*State of Michigan*
P.O. Box 30212
Lansing, MI 48909

KEITH ELLISON
*Attorney General*
*State of Minnesota*
102 State Capitol
75 Rev. Dr. Martin Luther
    King Jr. Blvd.
St. Paul, MN 55155

GURBIR S. GREWAL
*Attorney General*
*State of New Jersey*
25 Market Street
Trenton, NJ 08625

HECTOR BALDERAS
*Attorney General*
*State of New Mexico*
Post Office Drawer 1508
Santa Fe, NM 87504

LETITIA JAMES
*Attorney General*
*State of New York*
The Capitol
Albany, NY 12224

ELLEN F. ROSENBLUM
*Attorney General*
*State of Oregon*
1162 Court Street NE
Salem, OR 97301

JOSH SHAPIRO
*Attorney General*
*Commonwealth of Pennsylvania*
Strawberry Square
Harrisburg, PA 17120

THOMAS J. DONOVAN, JR.
*Attorney General*
*State of Vermont*
109 State Street
Montpelier, VT 05609

March 5, 2021

PETER F. NERONHA
*Attorney General*
*State of Rhode Island*
150 South Main Street
Providence, RI 02903

MARK R. HERRING
*Attorney General*
*Commonwealth of Virginia*
202 North 9th Street
Richmond, VA 23219

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
### Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** | 20-35827

I am the attorney or self-represented party.

**This brief contains** | 5,365 | **words**, excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◉ is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one):*

    ○ it is a joint brief submitted by separately represented parties;

    ○ a party or parties are filing a single brief in response to multiple briefs; or

    ○ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [       ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ Alex Hemmer | **Date** | 03/05/2021

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**          *Rev. 12/01/2018*